## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DWIGHT L. KEIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:2006-95 |
| v. | ) |
| | ) |
| RICHLAND TOWNSHIP BOARD | ) JUDGE GIBSON |
| OF SUPERVISORS, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on the Richland Township Board of Supervisors' (Defendant) Motion to Dismiss (Document No. 3) and accompanying Memorandum of Law in Support of the Defendant's Motion (Document No. 4). For the reasons stated herein, the Motion will be granted in part without prejudice and denied in part.

### FACTUAL BACKGROUND/PROCEDURAL HISTORY

Dwight L. Keim (Plaintiff) filed the present Complaint in the Court of Common Pleas of Cambria County, Pennsylvania. Although the date of that filing is unknown, the Complaint was served upon the Defendant on March 24, 2006. Before answering the Complaint, the Defendant removed this action to this Court on April 21, 2006 and the parties filed a stipulation to extend the time for the Defendant to answer to on or before April 26, 2006. The Defendant then filed the present motion to dismiss on May 26, 2006.

The Plaintiff's Complaint contains five counts that state claims for breach of contract, impairment of the contracts clauses of the Pennsylvania and Federal constitutions, deprivation of "Constitutional Rights" under 42 U.S.C. § 1983 and promissory estoppel. Complaint (Document No. 1-2), p. 7. The legal claims stem from the Plaintiff's allegation that the Defendant failed to hire the Plaintiff, a part-time police officer for the Defendant, on a full-time basis in accordance with oral promises made directly to the Plaintiff and a previously established policy of hiring full-time police officers from the part-time police officer ranks of the Richland Township Police Department.

The Complaint alleges that the Plaintiff made application for a part-time police officer position with the Richland Township Police Department in December 1992, received a written offer for part-time employment in December 1993, and hired by the Defendant on a part-time basis in 1994 after "successfully completing the physical examination and training...." Complaint ¶¶ 3,6, 7. The Plaintiff alleges that during the course of his interviews, the Defendant explained that it had a policy of hiring its part-time police officers on a full-time basis after they completed "1,000 hours with the Township"[1] and the Defendant "advised Plaintiff that the part-time police officer position for which he had applied would be offered to him, so long as Plaintiff agreed to work full-time in the event a full-time position became available." Complaint, ¶¶ 4,5. Since 1994, Plaintiff has continued his part-time duties for the Defendant, completing the 1,000 hour requirement, but has not been hired on a full-time basis despite being promised by the former Chief of Police, Chief Mock, in 1999 and again from 2000 until 2002 by two members of the Defendant-Board of Supervisors that he would be hired full-time. Complaint, ¶¶

---

[1]The Plaintiff alleges that thirteen part-time police officers "[f]rom 1977 to 1993" were hired as full-time police officers. Complaint, ¶ 10.

9, 12, 13, 16. From 1993 to 2004, Defendant did not hire any new full-time police officers [only "additional part-time police officers"]. Complaint, ¶ 11. Since becoming a part-time police officer with Richland Township Police Department in 1994, Plaintiff has taken a second part-time position with the Somerset Borough Police Department in 1999 and subsequently left that position and obtained a position with the University of Pittsburgh-Johnstown Police Department in December 1999 while continuing to work for Richland Township. Complaint, ¶¶ 12, 14. The Plaintiff alleges he resigned from the Somerset Borough position, in which he worked twenty-four to thirty two hours per week, in reliance on Chief Mock's September 1999 promise that "he would soon be given full-time employment, this time, within a year." Complaint, ¶¶ 12, 13, 15.

However, "[o]n December 30, 2002, Defendant passed a resolution to unilaterally 'rescind any assumed policy of hiring or promoting from the part-time police to full-time positions.'" Complaint, ¶ 17. Chief Mock felt that Plaintiff would not be affected by the resolution in that he believed the Plaintiff would pass "the physical agility, written, and oral tests that were given as part of the new hiring process." Complaint, ¶ 19. The Plaintiff passed these tests, scoring the highest of all part-time police officers taking the tests, but the Defendant hired "'outside' police officers to full-time positions" in April, May and August 2004. The Plaintiff notes that he "has not faced any disciplinary action in his twelve (12) years of employment as a part-time officer and had achieved a number of special police training credentials and an impeccable work record." Complaint, ¶ 21.

The Complaint presents the facts as follows: "[a]fter a series of interviews" the Defendant conditioned the making of an offer of part-time employment based upon the Plaintiff's agreement "to work full-time in the event a full-time position became available,"; it is unknown whether the Plaintiff

3

promised to do such, and thereby make a bilateral contract with the Defendant. Complaint ¶ 5. This oral promise was first made by the Defendant "[d]uring all of the Plaintiff's hiring interviews with Defendant". Complaint ¶¶ 4, 24. The next paragraph indicates that the Defendant made a "written offer of part-time employment" to the Plaintiff "conditioned upon his completion of a physical examination and training requirements." Complaint, ¶ 6. There is no mention of whether the written offer was conditioned upon the Plaintiff's agreement to work full-time when full-time employment became available.[2] However, the Plaintiff met the conditions set forth in the written offer as described in the complaint and was hired on a part-time basis. Complaint, ¶¶ 7, 8.

It is not indicated whether the Plaintiff's acceptance of the initial offer of part-time employment included the promise of the Plaintiff to work full-time if full-time employment became available. However, a subsequent offer made by the Defendant concerning the same subject matter (part-time employment) was made in written form and it is not alleged to contain a requirement that Plaintiff promise to work full-time, but a promise to complete "physical examination and training requirements." Complaint, ¶¶ 5-7. Thus, the initial verbal offer was rescinded by the Defendant through a subsequent written offer concerning the same subject matter, which the Plaintiff accepted. *See* 1-2 *Corbin on Contracts,* § 2.20 (2006) ("The making of an alteration in the terms of the offer, or the making of a new offer involving the same subject matter, communicated to the offeree, will end the power to accept the original offer, without using any express words of revocation.") The Plaintiff is arguing that his employment contract includes a policy of the Defendant that was not alleged to be a term of the offer

---

[2]The parties have neither raised an issue of parol evidence nor whether the written offer presented to the Plaintiff was intended to be the "complete" and "integrated" "expression of agreement" and therefore, the Court will not address the issues at this time. *See* MURRAY ON CONTRACTS, § 82 (4th ed. 2001).

4

made to him. In the absence of such an allegation, the Court cannot "assume that the [plaintiff] can prove [such] facts...." *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 n. 13 (3d Cir. 1998)(citation omitted).

Pennsylvania law has recognized that an employer's failure to comply with its own personnel policies is not necessarily a breach of an employment contract; the personnel policies must be shown to have been part of an offer of employment in order to be a term of the employment contract. *See Morosetti v. Louisiana Land and Exploration Co.*, 564 A.2d 151, 152-153 (Pa. 1989). The fact that Defendant had a policy of only hiring its part-time police officers for its vacant full-time police officer positions and that policy was made known to the Plaintiff during or after his interviews with the Defendant does not equate to the fact that it was made a term of the Defendant's offer of employment to the Plaintiff.

The Court further agrees with the Defendant that any promise made to the Plaintiff for full-time employment was "aspirational" in that such a promise was not a part of the terms of the offer of employment, but only a remark regarding the potential advancement available to the Plaintiff, not a guarantee from the employer to him. *See Veno v. Meredith,* 515 A.2d 571, 579 (Pa. Super. 1986); *Readmond v. Matsushita Elec. Corp.,* 355 F.Supp. 1073, 1077-1078 (E.D.Pa. 1973). Furthermore, as indicated above, even if such was a term of the offer, the Complaint alleges the written offer essentially superceded it because it does not state that the Plaintiff accepted this oral offer.

Finally, the Court also agrees with the Defendant's conclusion that any promises to be promoted to full-time status that were made to the Plaintiff after he was already employed on a part-time basis were not supported by consideration in accordance with *Ross v. Montour Railroad Co.,* 516 A.2d 29,

5

30-31 (Pa. Super. 1986) and *Dugan v. Bell Telephone of Pa.*, 876 F.Supp. 713, 726-727 (W.D.Pa. 1994); the Defendant did not bargain for the Plaintiff's forbearance from seeking other work, specifically his resignation from his part-time employment with the Borough of Somerset (Complaint ¶ 15). Additionally, the assurances of Chief Mock and members of the Defendant-Board of Supervisors regarding full-time status (Complaint ¶¶ 13, 16) as well as the Plaintiff's successful completion of all testing, examinations and training (Complaint ¶ 20), the Defendant's lack of "disciplinary action[s]" and his attainment of "special police training credentials and an impeccable work record" (Complaint ¶ 21) were not bargained for by the Defendant.

Therefore, the Court finds that the Plaintiff, under the facts alleged, cannot state a claim for breach of contract under Pennsylvania law. We will now address the claims concerning the contract clauses of the Federal and Pennsylvania Constitutions.

The Defendant argues for dismissal of Count II (Contracts Clause, Pennsylvania Constitution), Count III (Contracts Clause, Federal Constitution) and Count IV (42 U.S.C. § 1983), viewing said claims as repetitive and subject to the same analysis. The Third Circuit Court of Appeals recognized that the Supreme Court of Pennsylvania analyzes the Pennsylvania Contracts Clause in the same manner as its Federal counterpart. *Transport Workers Union of America, Local 290 v. SEPTA*, 145 F.3d 619, 624-625 (3d Cir. 1998). As the Plaintiff has based his allegations in Count IV upon § 1983 in asserting his "right to have the obligation of contracts free from the impairment of law" under the Contracts Clause, we will analyze this count together with Counts II and III.[3]

---

[3]The Defendant "assumes, *arguendo*, that Section 1983 is an appropriate vehicle for asserting a claim under the Contracts Clause" for purposes of the present motion, but does so noting that it believes the dearth of case law on this issue indicates a contrary conclusion. Therefore, the Court need not address this argument in ruling on the present motion.

Pennsylvania's Constitution sets forth a prohibition against the impairment of contracts, otherwise referred to as the contracts clause in Article I, § 17 which reads: "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." The Federal Constitution also includes a clause that contains a similar prohibition in Article I, § 10: "No State shall ...pass ...Law impairing the Obligation of Contracts...."

The prohibition set forth in these clauses "limits the power of the States to modify their own contracts as well as to regulate those between private parties", *U.S. Trust Co. Of New York v. New Jersey*, 431 U.S. 1, 17, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92, 106 (1977) and "the prohibition ... is not an absolute one and is not to be read with literal exactness like a mathematical formula." *Home Bldg. & Loan Assoc. v. Blaisdell*, 290 U.S. 398, 428, 54 S.Ct. 231, 236, 78 L.Ed. 413, 423 (1934).

> In order to prove a violation of this constitutional provision, a plaintiff must demonstrate that a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" *General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). Thus, Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial. *See Romein,* 503 U.S. at 186, 112 S.Ct. 1105. If it is determined that a substantial impairment of a contractual relationship has occurred, the court must further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose. *See Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 242-44, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *Nieves v. Hess Oil Virgin Islands Corp.,* 819 F.2d 1237, 1243 (3d Cir.1987). If the impaired contractual relationship is between private parties, the court will defer to the legislative judgment concerning the importance of the public purpose and the manner in which that purpose is being pursued. *See Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 412-13, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). If the state is a party to the contract, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-

7

interest is at stake." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 26, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

*Transport Workers Union of America, Local 290 v. SEPTA*, 145 F.3d 619, 621-622 (3d Cir.1998).

The Court has concluded that no contract exists. Thus, no breach of either the Federal or Pennsylvania contracts clause has occurred. However, for sake of completeness, the Court will proceed with the analysis and begin at the second inquiry.

At this step, it must be determined if the resolution passed by the Defendant impaired the alleged contractual relationship. The impairment prohibited by the Federal Contracts Clause does not result from every modification of every contract. *City of El Paso v. Simmons*, 379 U.S. 497, 506-508, 85 S.Ct. 577, 582-583, 13 L.Ed.2d 446, 453-454 (1965). The Defendant as a Board of Supervisors of a Second Class Township in Pennsylvania has the power to appoint and "determine the number and the compensation of police officers." 53 P.S. § 66902. Thus, the Defendant's resolution to rescind the policy of only looking to the part-time police officer ranks for candidates for vacant full-time police officer positions is a power provided by state law, and thus such resolution is considered to be a law within the scope of the Federal Contracts Clause. *Atlantic Coast Line Railroad Co. v. City of Goldsboro*, 232 U.S. 548, 555, 34 S.Ct. 364, 366, 58 L.Ed. 721, 725 (1914)("A municipal by-law or ordinance, enacted by virtue of power for that purpose delegated by the legislature of the state, is a state law within the meaning of the Federal Constitution."(citations omitted)).[4] Clearly a resolution to not

---

[4]The Defendant assumes *arguendo* that the Defendant's "Resolution is a'law' within the meaning of the respective Contract Clauses" despite citing an unpublished district court case contrary to *Atlantic Coast Line Railroad Co.* Defendant's Brief, 15, n. 2. Based upon this assumption for purposes of this motion, this issue warrants no further discussion.

8

follow the policy of hiring full-time police officers from the part-time police officer ranks would be an impairment if said policy was a part of a legally binding agreement supported by consideration. The resolution impairs a contract by announcing the fact that a previously followed policy will no longer be enforced, thereby releasing the Defendant of its obligation. This is entirely different from a breach situation because in a breach of contract, the obligation remains, while in an impairment of contract, rights or terms previously contracted to are altered or possibly extinguished. *See Hays v. Port of Seattle*, 251 U.S. 233, 237, 40 S.Ct. 125, 126-127, 64 L.Ed. 243, 246 (1920). The question remains, if the Defendant's resolution impaired a contract, was the impairment substantial?

> The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation.

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245, 98 S.Ct. 2716, 2723, 57 L.Ed.2d 727, 736-737 (1978)(footnote omitted). To the extent that a contract was formed which included the term that the Plaintiff, by being a part-time police officer, was a member of a group of candidates for the full-time police officer position, the Court fails to see a substantial impairment generally. Despite Defendant's expansion of the pool of eligible applicants from its part-time police officers to all qualified persons, the Plaintiff remained a member of the pool of candidates and had never been promised employment as a full-time police officer. The Court finds this change a minimal contractual alteration. To the extent that a contract was formed through the promises of Chief Mock and members of the Defendant-Board of Supervisors that the Plaintiff would be hired on a full-time basis prior to the resolution's passage, the resolution itself is a valid exercise of police power granted to the township. Although the

9

established precedent surrounding the exercise of police power concerns mostly regulatory schemes,

expenditures of a state's treasury and a host of other contractual obligations of the states, the absence

of precedent regarding the power of political subdivisions to control the appointment of its police

officers allows the Court to rely upon the general understanding of the state's police power in order to

resolve this issue:

> [I]t is to be accepted as a commonplace that the Contract Clause does not operate to
> obliterate the police power of the States. 'It is the settled law of this court that the
> interdiction of statutes impairing the obligation of contracts does not prevent the State
> from exercising such powers as are vested in it for the promotion of the common weal,
> or are necessary for the general good of the public, though contracts previously entered
> into between individuals may thereby be affected. This power, which in its various
> ramifications is known as the police power, is an exercise of the sovereign right of the
> Government to protect the lives, health, morals, comfort and general welfare of the
> people, and is paramount to any rights under contracts between individuals.'

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 503, 107 S.Ct. 1232, 1251, 94 L.Ed.2d

472, 500 (1987)(citation omitted). The power of the Defendant to hire police officers, *see* 53 P.S. §

66902, is clearly an exercise of police power as they are granted the powers set forth in the laws of

Pennsylvania, 53 P.S. § 66905. However, unlike the deference owed to laws enacted that possibly

impair contracts between private parties, deference is not owed to the resolution of the Defendant,

because it is a party to the alleged contracts. *Transport Workers Union of America, supra* at p. 7. The

decision of the Defendant to widen its pool of full-time police officer candidates did not in itself

disqualify the Plaintiff from consideration. The Court finds that the Defendant's choice to take such

action is clearly within its police powers to provide for the safety of its citizens, and to meet this

objective, the consideration of the most qualified candidates is a reasonable and appropriate action to

10

further this goal. Thus, the alleged contract to hire the Defendant "pre-resolution" must yield to the consideration of the most qualified candidates for full-time employment and does not violate the Contracts Clauses.

To the extent the Plaintiff was "led...to believe that he would be unaffected by Defendant's new hiring policy", Complaint ¶ 19, and had completed and successfully passed all necessary training and examination requirements and was still passed over by the Defendant, the Court still finds that the decision to hire other candidates was a valid exercise of the police power of the Defendant in following its own resolution and entering into employment contracts with candidates it felt were more qualified. Therefore, the Court fails to find any substantial impairment of any alleged contracts between the Defendant and the Plaintiff in contravention of the Pennsylvania and Federal Contracts Clauses or any violation of a possible right to be free from impairment of contracts.

Finally, the Defendant moves to dismiss Count V of the Complaint, arguing that promissory estoppel is not recognized in Pennsylvania to enforce promises made by an employer, such as the ones alleged here, in an at-will employment contract. The Plaintiff disagrees, arguing that the Defendant's reading of the law of promissory estoppel is limited to "the context of wrongful discharge." Plaintiff's Brief (Document No. 6), p. 9.

It is true that the case of *Paul v. Lankanau Hospital*, 569 A.2d 346 (Pa. 1990) was in the context of discharge and the cases of *Travers v. Cameron County School District*, 544 A.2d 547 (Pa. Commw. 1988) and *Arasi v. Neema Medical Services, Inc.*, 595 A.2d 1205 (Pa. Super. 1991) cited by the Plaintiff are also cases involving discharge, but differ from *Paul* in that they addressed employment

11

circumstances involving contractual, not at-will employment. However, *Paul* concerns equitable estoppel, not promissory estoppel. *Paul, supra*; *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 336 (Pa. 1995); *Ruzicki v. Catholic Cemeteries Ass'n of Diocese of Pittsburgh*, 610 A.2d 495 (1992). Promissory estoppel is derivative of equitable estoppel and it is a cause of action whereas equitable estoppel can be used as a defense or as a means to preclude a party from offering a defense or other legal "position." *Travers* at 550. *Northcraft v. Edward C. Michener Assoc., Inc.*, 466 A.2d 620, 626 (Pa. Super. 1983); *Com. Ex rel. Gonzalez v. Andreas*, 369 A.2d 416, 418. *See also* MURRAY ON CONTRACTS, § 66 (A)(1) (4ᵗʰ ed. 2001)(discussing the development of "promissory estoppel" from "equitable estoppel" as a recognition that a promisor is estopped from denying his promise when it has been relied upon by the promisee). There is no question that the Plaintiff was not discharged from his part-time employment by the Defendant, but only that he sought employment on a full-time basis. The Plaintiff was promised that he would be considered a candidate for full-time employment and later promised full-time status as a police officer for Richland Township. It is the Court's understanding that under Pennsylvania law, the Defendant may hire, organize and supervise a township police department as it sees fit, essentially meaning that the police officers have an at-will employment contract with the Defendant. Despite an at-will status, the Court does not find that Pennsylvania law precludes application of promissory estoppel with regard to the Plaintiff's claim of failure to hire on a full-time basis while currently employed on a part-time basis. The fact that the Plaintiff has alleged he resigned from the Somerset Police Department could provide the detriment suffered in reliance on promises of full-time employment while already working in a part-time role for the Defendant. To this extent the Court finds the cases offered in support of the Defendant's arguments inapposite because they concern

12

the *termination* of at-will employees for assuming to their detriment that they could rely on the policies or promises of their employers when taking certain actions as employees. The Plaintiff was hired for part-time employment, but was promised full-time employment if he remained employed with Richland Township Police Department. Had the Defendant fired him subsequent to those promises, the case *sub judice* would be factually akin to the *Paul* line of cases. However, the Plaintiff remains employed part-time with Richland Township Police Department, a choice he made in reliance upon the promise of the Defendant to hire him on a full-time basis. Under these circumstances, the Court finds that the Plaintiff's promissory estoppel claim survives.

The Court notes that promissory estoppel does not exist for the Defendant's promises presented prior to the Plaintiff's part-time employment. The first promise made to the Plaintiff was a promise to be considered for full-time employment when such employment became available after he completed 1000 hours of part-time employment. After completion of his interviews, the Plaintiff was the Defendant promised the Plaintiff that he would be considered full-time employment if he accepted a part-time position. It is not alleged that the Plaintiff relied to his detriment in response to these two promises and accepted employment in lieu of other options at the initial hiring stage, but only that he completed the necessary requirements "for part-time employment." Complaint ¶ 41. These requirements were necessary for part-time employment in the first instance under the written offer of employment and no detriment was suffered by the Plaintiff in completing these tasks as the written offer of employment superceded the oral offers of the same subject matter. *Supra* at p. 4. Also, after enactment of the new hiring policy in 2002, Chief Mock's actions in "leading the Plaintiff to believe that he would be unaffected" by the change in policy and would be hired for full-time employment if

13

he completed the requirements of the new hiring process does not present circumstances upon which detrimental reliance by the Plaintiff can be found. Complaint, ¶ 19. The Court also does not find any promise made by Chief Mock was made on behalf of the Defendant under these facts. Additionally, the pre-requisities mentioned by Chief Mock were required of the Plaintiff to be a candidate after the 2002 change in policy even in the absence of Chief Mock "aspirational" remarks to the Plaintiff.

Therefore, as a validation device, promissory estoppel can only be used by the Plaintiff to support such a claim upon the promises made to him after commencement of part-time employment, but before the 2002 change in hiring policy. All other facts do not support a claim of promissory estoppel and will be dismissed, subject to an amended complaint being filed.

An appropriate Order follows.

14

**AND NOW**, this 30th day of March, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant's Motion to Dismiss (Document No. 3), is GRANTED IN PART as to Counts One, Two, Three and Four and those counts are DISMISSED, however, the Plaintiff is granted leave to amend his complaint as to such claims; and GRANTED IN PART as to Count Five regarding promises made before the Plaintiff's part-time employment with the Defendant and promises made subsequent to the Defendant's December 30, 2002 change in hiring policy and these claims are DISMISSED, however, the Plaintiff is granted leave to amend his Complaint as to such claims; and DENIED IN PART as to Count Five as to promises made to the Plaintiff after his part-time employment began with the Defendant but before the December 30, 2002 change in hiring policy. IT IS FURTHER ORDERED THAT the Plaintiff may amend all Counts dismissed on or before April 19, 2007 and the Defendant shall respond to that amended Complaint, if one is filed, with an Answer or a Second Motion to Dismiss, on or before May 9, 2007.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

15